# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01303-MSK-CBS

**MATTHEW WITT,[1]**

    **Plaintiff,**

**v.**

**CHARLES D. SNIDER, JR.;**
**NOEL WEST LANE, III;**
**DAMON M. SEMMENS; and**
**DAVID E. KEIL,**

    **Defendants.**

_____

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS AND DISMISSING ACTION

_____

    **THIS MATTER** comes before the Court, nominally pursuant to Mr. Witt's Motion to Dismiss **(# 124)**, to which Mr. Semmens has filed a response **(# 130)**.  The discussion herein also implicates Mr. Semmens' prior Motion to Dismiss **(# 30)**, Mr. Witt's response **(# 35)**, and Mr. Semmens' reply **(# 42)**, as well as similar motions filed by other Defendants.   There are a number of other motions pending in this action, including several filed by Mr. Lane, but for the reasons set forth herein, the Court need not reach those.

## FACTS

    Mr. Witt's Amended Complaint **(# 27)** is a 59-page document thick with impertinent details.  Shorn of its excess, the factual allegations can be summarized fairly succinctly.   Mr.

_____

[1]    For reasons addressed herein, the Court has *sua sponte* modified the caption of the case to reflect the current status of the parties.

Witt operated an entity called CCI that engaged in the business of commercial lending. In 2007, Mr. Witt and CCI entered into a lending arrangement with Mr. Snider and Mr. Snider's business, Trico. That arrangement unraveled in 2008, with Mr. Witt and/or CCI bringing suit against Mr. Snider and/or Trico. Mr. Witt alleges that, at this time, Mr. Snider "sw[ore] to Witt that he would get revenge against him for the rest of Witt's life."

Separately, in 2008, Mr. Witt and CCI entered into a business arrangement with Mr. Lane and his various business entities.[2] In early 2009, Mr. Lane convinced Mr. Witt to hire him as an officer of CCI, but that arrangement also ended acrimoniously shortly thereafter, with Mr. Witt terminating Mr. Lane and accusing him of attempting to sabotage CCI and steal its business. As with Mr. Snider, Mr. Witt alleges that Mr. Lane then threatened to "take down" CCI and Mr. Witt

CCI filed a bankruptcy petition under Chapter 11 in April 2009; a Trustee was appointed to represent CCI's estate. Mr. Witt alleges that Mr. Lane "manipulate[d] the bankruptcy cases and defame[d] Witt" by filing numerous frivolous adversary claims in that action, in violation of 11 U.S.C. § 152(4). Mr. Witt further alleges that both Mr. Snider and Mr. Lane jointly agreed at this time to "abuse the bankruptcy process" and "retaliate against Witt," albeit in ways that are largely unspecified. The Complaint goes on to recite, in great detail, various events occurring during the course of the bankruptcy case and "defamatory" statements that Mr. Lane purportedly made to trustees and other creditors, accusing Mr. Witt of various acts of fraud or deceit. Little

_____

[2]     At this point, the Complaint digresses into an extended recitation concerning a residential mortgage loan that CCI made to an associate of Mr. Lane's named Denver Haslam. The property secured by the loan burned down in suspicious circumstances at a time when Mr. Lane was under contract to purchase it from Mr. Haslam. The saga of the Haslam incident runs throughout Mr. Witt's Complaint here, occasionally propping up Mr. Witt's allegations in other respects, and it forms the backbone of Mr. Lane's mammoth set of counter- and third-party claims. Ultimately, however, the allegations concerning Ms. Haslam and the incident are of no consequence to the analysis herein, and thus, the Court declines to summarize them further.

of this detail is relevant, except perhaps for an allegations that from approximately 2010 until "late 2012 and 2013," Mr. Lane and Mr. Snider "each . . . made multiple threats against Witt of violent retaliation and incarceration, and threatened to continue to destroy Witt's companies and his reputation," unless Mr. Witt would agree to testify on their behalf in opposition to an adversary proceeding brought by CCI's Trustee.  Mr. Witt alleges that these threats, for which no additional detail is supplied, constitute witness tampering in violation of 18 U.S.C. § 1512 and witness retaliation in violation of 18 U.S.C. § 1513.  Eventually, Mr. Lane and Mr. Snider settled their adversary claims with CCI's Trustee.

In 2011, one of the Trustees that had represented a CCI entity during the bankruptcy proceeding turned around and brought an adversary suit against Mr. Witt himself, accusing him of misappropriating CCI assets.  Once again, Mr. Witt's Complaint goes into extensive detail about this proceeding, but it is unclear what relevance these developments have to his claims against the Defendants herein. At most, Mr. Witt appears to allege that Mr. Lane and Mr. Snider were "leading the creditors who were pressuring [the Trustee] to sue Witt," but otherwise makes no allegations regarding them in this context.  The proceeding ultimately resulted in a judgment against Mr. Witt in excess of $1.5 million, a judgment that Mr. Witt unsurprisingly insists is improper.

At some point in or about 2014, Mr. Lane and Mr. Snider "determined the best way to continue advancing their shared goal of destroying the rest of Witt's life was to purchase the Judgment" described above.  An entity named Rekon, owned by Mr. Snider and Mr. Lane, offered to purchase the judgment from the Trustee for $16,000.  The Trustee provisionally accepted, and although Mr. Witt recites a wealth of additional information regarding the sale of the judgment, little of it is significant.  It is sufficient to note that Mr. Witt attempted to purchase

the judgment himself, but the Trustee accepted Rekon's bid of $18,000 and sold the judgment in February 2014. Thereafter, it appears that Rekon commenced suit against Mr. Witt in Arapahoe County, Colorado, accusing Mr. Witt of engaging in fraudulent transfers to shield his assets from collection on that judgment. That proceeding is, by all appearances, ongoing.

Based on these allegations, Mr. Witt alleges eight claims for relief: (i) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, in that Mr. Lane and Mr. Snider formed a criminal enterprise in 2009 (and that Mr. Semmens and Mr. Keil joined it later, as discussed herein) for the purpose of destroying Mr. Witt and CCI and engaged in a pattern of racketeering acts including "extortion, bankruptcy fraud, witness tampering, witness retaliation, and related tortious acts" to achieve that goal; (ii) violation of the Colorado Corrupt Organizations Control Act ("CCOCA"), C.R.S. § 18-17-101 *et seq.*, on the same facts and others discussed below; (iii) a common-law tort claim for abuse of process, apparently under Colorado law, against Mr. Snider, Mr. Lane, and Mr. Semmens, in that Rekon and Mr. Semmens have commenced the proceeding in Arapahoe County alleging fraudulent transfers, all "for no purpose other than to embarrass Witt"; (iv) common-law defamation against Mr. Keil, arising primarily from statements Mr. Keil made to Mr. Witt's co-workers in 2015, accusing Mr. Witt of engaging in embezzlement; (v) common-law defamation against Mr. Semmens, apparently on the theory that Mr. Semmens is vicariously liable for the defamatory statements made by Mr. Keil, along with statements made by Mr. Semmens in the Arapahoe County litigation; (vi) and (vii) the same defamation claim that is alleged against Mr. Semmens, now alleged against Mr. Snider and Mr. Lane respectively; and (viii) a tort claim for outrageous conduct, apparently under Colorado law, against all Defendants, based generally on the allegations above.

Three of the four Defendants – all but Mr. Lane –filed motions to dismiss Mr. Witt's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Mr. Lane instead filed a *pro se* Answer and Counterclaims **(# 84)** that runs some 150 pages and asserts a broad range of claims against Mr. Witt, the other Defendants in this matter, and various third parties. Before the Court could rule on any motions, Mr. Witt filed for bankruptcy **(# 103)** on March 6, 2017, and a Trustee was appointed to administer his estate. In light of that appointment, the Court amended the caption of the action to substitute the Trustee for Mr. Witt and denied all the pending motions – including the Defendants' motions to dismiss – until the Trustee could examine Mr. Witt's claims and decide whether to pursue, modify, or withdraw them on behalf of the estate **(# 106)**. The record reflects that Mr. Witt's bankruptcy case was short-lived, however; it was apparently dismissed by the bankruptcy court on April 26, 2017. The dismissal of the bankruptcy case effectively terminated the Trustee's control over this case, placing it back in Mr. Witt's hands. (As a result, the Court has again amended the caption set forth above to reflect this state of affairs.)

Shortly thereafter, Mr. Witt filed the instant Motion to Dismiss **(# 124)**, explaining that he had become convinced that the case would be heard more expeditiously if pursued in state court. He sought to dismiss[3] his RICO claim without prejudice, thereby severing the predicate for federal subject-matter jurisdiction and effectuating the dismissal of the action in its entirety. Mr. Witt made clear that he intended to continue to pursue his state-law claims against the Defendants in a new state-court action. Although the time to respond to this motion under D.C. Colo. L. Civ. R. 7.1(d) has not yet run, at least one Defendant, Mr. Semmens, has already opposed Mr. Witt's requested dismissal. Mr. Semmens argues that Mr. Witt is engaging in

---

[3]     Mr. Lane's filing of an Answer prevented Mr. Witt from effecting that dismissal as of right under Fed. R. Civ. P. 41(a)(1). Thus, Mr. Witt requested the Court's permission to dismiss the action under Rule 41(a)(2).

vexatious litigation designed to cause the Defendants to incur fees, yet prevent conclusive adjudication of Mr. Witt's (or, for that matter, the Defendants' state-court) claims. Mr. Semmens requests, alternatively, that the Court deny Mr. Witt's request to dismiss the action, that the Court grant the motion on the condition that Mr. Witt pay the Defendants' accrued attorney fees in part or whole, that the Court dismiss Mr. Witt's claims with prejudice to prevent them from being reasserted, or that the Court revive and determine the Defendants' prior Rule 12(b)(6) motions.

The Court finds that it is sufficiently apprised of the issues here, and requires no further briefing on Mr. Witt's Motion to Dismiss to make a determination. D.C. Colo. L. Civ. R. 7.1(d).

## ANALYSIS

The Court will not belabor its analysis of Mr. Witt's Motion to Dismiss under Rule 41(a)(2). Regardless of whether the Court would be inclined to grant that motion, either unconditionally or on certain conditions sought by Mr. Semmens, a curious feature of Rule 41(a)(2) presents an additional obstacle. Under the Rule, "if a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Here, Mr. Lane has pled a counterclaim prior to Mr. Witt seeking to dismiss, and although Mr. Lane has not yet responded to Mr. Witt's motion, one may reasonably anticipate that Mr. Lane might object to Mr. Witt dismissing his own action, taking Mr. Lane's counterclaims down in the process. Thus, the Court is faced with the question of whether Mr. Lane's counterclaims can, of their own accord, support federal subject-matter jurisdiction (and, relatedly, can any such claim that supports such jurisdiction survive further review under Fed. R. Civ. P. 8 and 12(b)(6)?).

The Court sees little cause to attempt to parse Mr. Lane's extensive and rambling counterclaims in order to answer that question. Instead, the Court finds it far easier to accept Mr. Semmens' invitation for the Court to return to the Defendants' fully-briefed motions to dismiss Mr. Witt's claims under Rule 12(b)(6) – specifically including the RICO claim – and adjudicate those. For the reasons set forth below, the Court finds that Mr. Witt has failed to state a cognizable RICO claim. Dismissal of that claim disposes of the sole basis for federal subject-matter jurisdiction here, requiring dismissal of the entire action – the very same relief that the Defendants previously sought and which Mr. Witt seeks now.[4]

**A. Standard of review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

---

[4] Because the Court dismisses Mr. Witt's Complaint for failure to state a claim over which this Court has jurisdiction under Rule 12(b)(6), it does not reach Mr. Semmens' argument that Mr. Witt should only be allowed to dismiss this action under Rule 41(a)(2) upon payment of the Defendants' attorney fees. Nothing in this dismissal precludes Mr. Semmens or any other Defendant from now moving separately for an award of attorney fees against Mr. Witt, citing authority that would justify such an award and making all other necessary showings. The Court will consider the merits of such a request when, and *if*, it is made.

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. RICO claim**

Mr. Witt's RICO claim is the linchpin that permits this federal court to exercise subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. §1331. Accordingly, the Court elects to first evaluate all of the Defendants' motions as directed at the RICO claim.

To adequately plead a civil RICO claim, a plaintiff must allege three elements: (i) conduct, (ii) of an enterprise, (iii) through a pattern of racketeering activity. *Salinas v. U.S.* 522 U.S. 52, 62 (1997).

RICO expressly defines the term "racketeering activity" to include violations of a wide range of federal criminal statutes. 18 U.S.C. § 1961(1). As relevant here, that definition includes the crimes of: (i) witness tampering, 18 U.S.C. § 1512; (ii) retaliating against a witness, 18 U.S.C. § 1513; and (iii) "any offense involving fraud connected with a case under title 11" – that is, fraud in connection with a bankruptcy proceeding. A "pattern of racketeering activity"

requires allegations of at least two such acts, plus some indication of a threat of continuing racketeering activity. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). A RICO "enterprise," in the context here, can consist of "a group of individuals associated in fact," even if not a legal entity, so long as it has: (i) a decision-making framework or mechanism for controlling the group; (ii) individuals involved functioning as a continuing unit; and (iii) an existence separate and apart from the pattern of racketeering activity itself (that is, that the question "would [the enterprise] still exist were the predicate acts removed from the equation?" would be answered in the affirmative). *U.S. v. Smith*, 413 F.3d 1253, 1266-67 (10th Cir. 2005); *Amaya v. Bregman*, 149 F.Supp.3d 1312, 1231 (D.N.M. 2015).

At the outset, the Court agrees generally with the Defendants that Mr. Witt's Amended Complaint violates Fed. R. Civ. P. 8(a)(2)'s requirement that a Complaint be a "short and plain statement." It is needlessly lengthy at 54 pages and 422 numbered paragraphs; it includes a wealth of irrelevant allegations, such as those concerning Mr. Haslam and extensive recitations of bankruptcy proceedings that have no bearing on the claims herein; it is painfully detailed in meaningless respects and unduly vague in those circumstances where detail is critical; and it is generally unfocused and confusing. For these reasons alone, the Court would be inclined to dismiss it.

Next, the Court turns to the sufficiency with which Mr. Witt has pled the requisite predicate acts. As noted above, the Amended Complaint somewhat obscures the alleged predicate acts beneath a heap of factual and legal chaff.[5] The following reflects the Court's best

---

[5]     For example, the Amended Complaint repeatedly appears to suggest that tortious acts of defamation can constitute predicate acts under RICO. *See e.g.* ¶ 8 (in the Amended Complaint's "RICO Statement," asserting that "After being fired, Lane began making extremely defamatory comments about Witt"); ¶ 66 (in the "Racketeering Activity" section, asserting that "... Lane used an alleged creditor status to manipulate the bankruptcy cases and defame Witt").

efforts to unearth those instances in which Mr. Witt has labeled a specific act as being one of the types of predicate acts cognizable under RICO.

Extortion under state law

18 U.S.C. § 1961(A) defines "any act or threat involving . . . extortion . . . which is chargeable under State law" as being "racketeering activity."

The Amended Complaint makes several references to the crime of Extortion under Colorado Law, C.R.S. § 18-3-207(1). ¶ 8.[6] Under Colorado law, the crime of Extortion occurs when two elements are satisfied: (i) a person, lacking legal authority to do so, makes a threat to confine the victim or cause economic, reputational, or physical harm to the victim, with the intent of coercing the victim to perform an act or refrain from performing an act, and (ii) the person proposes to do so by resorting to an unlawful act or by threatening to invoke action by a third party, such as law enforcement. C.R.S. § 18-3-207(1)(a), (b).

The word "extortion" or its cognates is used a handful of times in the Amended Complaint. First, it is referred to in general terms in an introductory paragraph summarizing the RICO claim. ¶ 8. Its next several uses are in a paragraph referring to conduct by Mr. Lane directed at Mr. Haslam, not Mr. Witt. ¶ 37, 41, 236. These allegations are irrelevant to Mr. Witt's claims.

The term is next used in a summary paragraph, ¶ 245 ("Collectively the defendants have participated in a pattern of racketeering activity  including extortion. . ."), that cites to entirely different paragraphs than those noted above, directing the reader back to paragraphs 49 and 110. Following Mr. Witt's lead, the Court returns back to those specific paragraphs. Paragraph 49

---

[6]     Citations consisting solely of a paragraph number are references to the given paragraph in Mr. Witt's Amended Complaint.

alleges that, at an indeterminate point in time, Mr. Lane "succeeded in obtaining $500,000 more from [CCI] than [he] should have received, by threatening to make false allegations about [CCI] that would destroy its business."   The Court finds this allegation to be too conclusory to suffice under *Iqbal* for several reasons.  First, the allegation that Mr. Lane "ma[d]e false allegations [to] destroy [CCI]" is entirely conclusory; it reflects Mr. Witt's impression of what Mr. Lane said, not what Mr. Lane actually said.  Moreover, the allegation fails to identify to whom Mr. Lane made the threats, when he made them, and in what manner; all of these are facts necessary to adequately allege a predicate act of Extortion.[7]  *Kaplan v. Archer*, 2012 WL 3277170 (D.Colo. Jul. 3, 2012), *citing Rini v. Zwirn*, 886 F.Supp. 270, 299 (E.D.N.Y. 1995).  Third, the allegation fails to allege that Mr. Lane lacked any legal authority to obtain the additional $500,000; if Mr. Lane had a legally-colorable claim to the additional funds, his resort to threats might be improper or unethical, but it would not be Extortion.  Thus, Paragraph 49 fails to adequately allege a RICO predicate act of Extortion.

Moving on to Paragraph 110, it reads:

---

[7]     The "when" would seem to be particularly important here.  RICO claims are subject to a four-year statute of limitations that begins to run on the date that plaintiff first had notice of the injury he complains of.  *Rotella v. Wood*, 528 U.S. 549, 552 (2000).  In selecting that date, the Supreme Court expressly rejected accrual methods that delayed the statute's running until the plaintiff discovered the existence and operation of the enterprise, or until the last predicate act in the pattern.  *Id.* at 553-55.

Here, Mr. Witt's claimed injury seems to be the destruction of his business, CCI.  It is not clear when Mr. Witt specifically fixes the date of that "destruction" – he describes the Defendants' plan to destroy CCI as "beginning to succeed" in 2009 when CCI was "forced" into filing for bankruptcy, ¶ 59, and CCI being dealt a "death blow" when he was denied Debtor in Possession status a few months later (an event which "furthered" the Defendant's goal), ¶ 98. However, Mr. Witt did not commence this action until May 2016, meaning that the acts constituting the RICO claim must have occurred on or after May 2012.  The Defendants have not raised statute of limitations as a basis for dismissal, and thus, the Court does not reach it at this time; however, it appears that many of the most significant events underlying Mr. Witt's RICO claim fall outside that limitations period, making the need to fix precise dates for each pertinent event even more important.

> From the time Lane and Snider made their first fraudulent claims
> and defenses until they settled with [CCI's bankruptcy Trustee] in
> late 2012 and 2013 by dismissing 100% of the amounts they
> alleged they were owed in their criminally fraudulent proofs of
> claim, each of them made multiple threats against Witt including
> death threats and incarceration, and threatened to continue to
> destroy Witt's companies and his reputation, unless he agreed to
> testify in support of their positions in the litigation with [Mr. Witt].
> Lane also, like he did with Haslam, threatened to have Witt
> prosecuted for conspiring to commit fraud against IndyMac.

Before the Court can analyze this allegation, it must parse it. The Court understands the first sentence to be primarily an allegation that Mr. Lane and Mr. Snider "made multiple threats against Witt" to induce him to give certain testimony; the remainder of the sentence appears to be a lengthy temporal clause locating when in time those threats were made – *i.e.* from the date they filed claims in the bankruptcy to the date they settled with CCI's Trustee. The second sentence alleges a separate threat by Mr. Lane against Mr. Witt.

The Court quickly disposes of the second sentence, as Mr. Witt does not allege that Mr. Lane's threats to expose Mr. Witt's alleged fraud against IndyMac were themselves "an unlawful act" as required by C.R.S. § 18-3-207(1)(b), nor that Mr. Lane lacked legal authority to report such fraud should he choose to do so. That leaves the first sentence's allegation that Mr. Lane and Mr. Snider made "multiple threats" to Mr. Witt to induce him to give testimony favoring them in the bankruptcy proceeding. Once again, such allegations fail to do a lack of specificity. Mr. Witt offers only his own conclusory interpretation of Mr. Lane and Mr. Snider's statements, not the statements themselves. The particular language used by Mr. Lane and Mr. Snider is important, as certain types of threats – threats to kill him or seek his prosecution – might suffice to satisfy C.R.S. § 18-3-207(1)(b), but more generalized "threats" – such as threats to "destroy his companies and reputation" – may not. A threat to destroy Mr. Witt's business or reputation does not, in and of itself, constitute Extortion; there must be a explicit threat to achieve that

destruction through the performance of a particular unlawful act.  *See generally Whimbush v. People*, 869 P2d 1245, 1249 (Colo. 1994) (holding as unconstitutional a prior version of the statute that lacked the provisions of subsection (1)(b), as that prior version "draws no distinction between [threats to perform] 'lawful' and 'unlawful' acts").  Paragraph 110 also leaves vague the question of whether the "threats" Mr. Lane and Mr. Snider made to compel Mr. Witt's testimony may have been made with lawful authority, that is, through Mr. Lane and Mr. Snider's power as litigants to compel the testimony of knowledgeable witnesses.  Once again, because the allegations in Paragraph 110 are conclusory and incomplete, the Court finds that they are insufficient to allege a predicate act of Extortion.

The Court then resumes its excursion through the remainder of the Amended Complaint for other instances in which Mr. Witt expressly identifies a particular act as Extortion.   In paragraph 250, Mr. Witt alleges that Mr. Semmens "engag[ed] in extortion to further [the enterprise's] goal," referring the reader to more than a dozen paragraphs found at paragraphs 266-275.  Several of these paragraphs are mere statutory quotations of no particular pleading value.  The first paragraph that is actually pertinent, ¶ 268, is typical of Mr. Witt's elusive pleading style: it refers the reader back to back to paragraphs 48 and 49, as well as forward to subsequent paragraphs 273 and 274.  The Court pauses to examine each of these.

Paragraph 48 alleges that, shortly after his termination from CCI, Mr. Lane "engaged in a pattern of sending voluminous communications to all of the officers and employees of [CCI] to pressure CCI to fund construction draws above the limits in his loan agreements."  This does not allege several of the elements of Extortion, most notably Mr. Lane's lack of lawful authority to "send[ ] voluminous communications," nor Mr. Lane threatening to perform any unlawful act.  Moreover, as previously noted, Mr. Witt's conclusory characterization of Mr. Lane's

communications does not suffice to plead the particular contents of the communications, nor the date and recipients of such communications.  Thus, Paragraph 48 fails to adequately allege a predicate act of Extortion.

Paragraphs 273 and 274 are lengthy, and the Court will not repeat them verbatim.  It is sufficient to observe that they relate to communications in 2015 between Mr. Semmens and Mr. Witt (or, perhaps, their lawyers), relating to Mr. Semmens' making settlement demands upon Mr. Witt in unspecified litigation (perhaps the Arapahoe County judgment collection suit).  Mr. Witt alleges that Mr. Semmens has threatened him with imprisonment, contempt proceedings, and "brutal litigation" unless Mr. Witt agreed to accept a settlement offer.  Putting aside profound questions as to whether Mr. Witt has adequately alleged that Mr. Semmens lacked legal authority to make the various threats described in these paragraphs, the Court is mindful of *Bixler*, 596 F.3d at 758, in which the 10th Circuit "refused to "recogniz[e] abusive litigation as a form of extortion [because doing so] would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim."  All of the allegations in Mr. Witt's Paragraphs 273 and 274 turn on "abusive litigation" actions, and *Bixler* makes clear that such allegations "do[ ] not state a RICO predicate act."

Returning again, to the remaining instances of Mr. Witt alleging Extortion in the Amended Complaint, paragraph 411 uses the term to describe the Defendants using "the pretext of a legitimate legal claim  . . . to extort money from him."  For the same reasons discussed above, this generalized assertion of abusive litigation techniques fails to state a predicate act. Paragraphs 414 and 416 essentially repeat the same allegations as Paragraphs 273 and 274, and fail for the same reason.

Thus, Mr. Witt has not adequately alleged any predicate actions of Extortion.

Witness Tampering

18 U.S.C. § 1512(a)(2) provides that a person who "uses physical force or the threat of physical force against any person," and does so with the intent to "influence, delay, or prevent the testimony of any person in an official proceeding" or to "cause [the] person to withhold testimony," destroy evidence, evade process, or fail to appear as a witness, is guilty of the crime of Witness Tampering.

Mr. Witt alleges that the Defendants committed the RICO predicate act of Witness Tampering. His only allegations in this regard refer to Paragraph 110, quoted above, in which Mr. Lane and Mr. Snider allegedly threatened him in order to induce him to give testimony favorable to them in the bankruptcy proceeding. The Court's prior discussion highlights several defects with that contention as currently pled, all of which apply with equal force to Mr. Witt's allegation that such conduct constituted Witness Tampering. In addition, Paragraph 110 is deficient in an additional respect: assuming Mr. Witt has adequately alleged that Mr. Witt and Mr. Snider threatened him with physical force, he has not alleged that the purpose of such a threat was to influence Mr. Witt's testimony, 18 U.S.C. § 1512(a)(2)(A), or to induce Mr. Witt to withhold testimony, 18 U.S.C. § 1512(a)(2)(B). Mr. Witt alleges only that Mr. Lane and Mr. Snider threatened him "to testify in support of their positions in the litigation"; he does not allege that such testimony was contrary to the testimony Mr. Witt would otherwise give. In other words, Mr. Witt's allegation is that susceptible to an interpretation that Mr. Witt was reluctant to give truthful testimony that would harm CCI (and benefit Mr. Lane and Mr. Snider), and that Mr. Lane and Mr. Snider made threats against Mr. Witt simply intended to compel Mr. Witt to appear and give such truthful testimony. Such conduct would not constitute a violation of 18

U.S.C. § 1512(a)(2). For these reasons, the Court finds that Mr. Witt has not adequately pled the RICO predicate act of Witness Tampering.

Witness Retaliation

Similarly, 18 U.S.C. § 1513(b) provides that a person who "threatens" to "cause[ ] bodily injury to another person or damages the tangible property of another person," and who performs such acts with the "intent to retaliate against any person for the attendance of a witness or party at an official proceeding," commits the crime of Witness Retaliation.

The Amended Complaint appears to allege a single instance of Witness Retaliation, in that Mr. Lane and Mr. Snider "continued with multiple threats against Witt of violent retaliation and incarceration, and made ongoing threats to destroy Witt's life" after they settled their adversary claims with CCI's Trustee. As the preceding discussion establishes, Mr. Witt's conclusory characterization of the contents of these threats and the failure to identify the date, content, and recipient of such threats render such allegations insufficient under *Iqbal*. Moreover, threats of "incarceration" and generalized threats to "destroy Witt's life" – as opposed to threats of actual physical violence – would seem to fall outside the narrow scope of what 18 U.S.C. § 1513(b) covers. The statute expressly refers to threats of "bodily injury" and "damage[ to] tangible property," and although Mr. Witt has copiously alleged the Defendants' intention to violate his intangible property – that is, CCI – he offers no allegations that the Defendants damaged or threatened to damage any tangible property belonging to him. Finally, the statute applies only to retaliation relating to a person who has actually appeared as a witness at a proceeding; here, Mr. Witt's allegations seem to suggest that he refused to appear and testify with regard to the adversary proceedings, thus removing such allegations from the statute's reach altogether. Thus, the Court finds that Mr. Witt's vague and conclusory assertions that the

Defendants threatened him physically following the settlement of the adversary proceedings fails to adequately allege a predicate act of Witness Retaliation.

Bankruptcy Fraud

Finally, RICO recognizes fraud in connection with bankruptcy proceedings as predicate acts. Because these predicate acts sound in fraud, they are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). Thus, Mr. Witt must not only plead the particular details of each fraudulent act – that is, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated" -- but he must also plead facts that give rise to a strong inference of fraudulent intent on the Defendants' part. *Id.*; *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993).

A person commits bankruptcy fraud when he or she "knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury . . . in relation to any case under Title 11." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991). Mr. Witt must also plead facts showing how <u>he</u> was injured by the Defendants engaging in fraud in <u>CCI</u>'s bankruptcy. *Id.*

The Amended Complaint recites the various creditor claims that Mr. Lane filed in CCI's bankruptcy, all in April 2009. ¶ 67-71. Putting aside any other defects in Mr. Witt's pleading of predicate acts based on these filings, the allegations fail for a simple reason: they predate the formation of the alleged RICO enterprise. Mr. Witt alleges that the enterprise – the combination of Mr. Witt and Mr. Snider – "formed [when] they agreed among other things to a shared purpose to use their companies' alleged creditor status in the CCI case . . . to abuse the bankruptcy process itself." ¶ 76. The Amended Complaint appears to allege that this agreement

occurred at the first creditors' meeting on May 27, 2009. Thus, Mr. Lane's allegedly fraudulent presentation of claims in April 2009 could not have been acts in furtherance of a RICO enterprise that was not formed until a month later; at best, they were acts that Mr. Lane took as an singular individual. Thus, Mr. Lane's filing of claims against CCI cannot constitute RICO predicate acts.

The Amended Complaint alleges that Mr. Lane and Mr. Snider filed additional claims against CCI in the bankruptcy court in February 2010 (and again in 2011), but notably, it does not proceed to assert that these claims were fraudulent. ¶ 102-104, 107. At this point in time, CCI was represented by a U.S. Trustee, who sought to disallow Mr. Lane and Mr. Snider's claims. Again, it is notable that Mr. Witt does not allege that the Trustee ever sought to have Mr. Lane and Mr. Snider's claims deemed "fraudulent" in any way. Given the degree of particularity that is required for claims of bankruptcy fraud, the Court cannot say that Mr. Witt has carried his burden in pleading that the 2010 or 2011 claims filed by Mr. Lane and Mr. Snider constitute bankruptcy fraud sufficient to constitute a RICO predicate act.

The remainder of the Amended Complaint goes on to describe later bankruptcy proceedings, brought by CCI's Trustee against Mr. Witt himself, but nothing in these allegations indicate that any Defendant signed or submitted any fraudulent statement in connection with them, only that CCI's Trustee acted at their urging. Accordingly, the Court finds that Mr. Witt has not sufficiently pled any RICO predicate act premised upon bankruptcy fraud.

Because the Court finds that Mr. Witt has not pled any RICO predicate acts, his RICO claim must be dismissed for failure to state a claim.

The dismissal of the RICO clam is fatal to this Court's subject-matter jurisdiction, which is premised solely upon federal question jurisdiction under 28 U.S.C. § 1331. It does not appear that there is any other basis for federal subject-matter jurisdiction; most notably, there is no

indication that the parties are diverse, such that federal jurisdiction would be appropriate under 28 U.S.C. § 1332.

### C. State law claims and counterclaims

Because the Court has concluded that it lacks subject-matter jurisdiction over Mr. Witt's federal claim, the exercise of supplemental jurisdiction over the state law claims is inappropriate. 28 U.S.C. § 1367(c)(3). Accordingly, the Court declines to reach the remainder of the Defendants' motions.

The Court also finds it appropriate to dismiss Mr. Lane's counter- and other claims for lack of subject matter jurisdiction. To the extent Mr. Lane piggybacks on Mr. Witt's invocation of federal jurisdiction, dismissal of Mr. Witt's RICO claim deprives this Court of any subject-matter jurisdiction. Whether Mr. Lane himself states a counter- or other claim that independently gives rise to federal jurisdiction is a question whose consideration is immediately hampered by several procedural defects.

First, it is difficult to ascertain exactly what document constitutes Mr. Lane's actual Answer. Docket # 81, 82, and 83 all purport to be Answers, all bear separate stamps indicating that they were filed with the Clerk's Office on February 10, 2017 (at 3:54 p.m, 3:55 p.m., and 3:56 p.m. respectively), and all three are at least somewhat distinct in their contents. On February 24, 2017, Mr. Witt filed two more documents, Docket # 84 and 85, both purporting to be Amended Answers. (It is not immediately clear to the Court whether these two documents differ in their extensive content, although the Court notes that the docket indicates that Docket #84 is 492 pages long, whereas Docket #85 is a mere 459 pages.)

Second, all five purported Answers are captioned as "Answer to Complaint and Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) [...]." Taking this legend at face value –

that is, understanding the documents to be both Answers <u>and</u> motions to dismiss-- the documents run afoul of D.C. Colo. L. Civ. R. 7.1(d)'s requirement that "a motion shall be filed as a separate document," not included with any other filing.

Third, all versions of Mr. Lane's purported Answers utterly fail to comply with Rule 8's "short and plain statement" requirement.  Each one contains at least 150 pages of text, often presented in a single paragraph that spans dozens of pages.  The document repeatedly reference multi-page bullet-pointed lists of "Allegations, Additional Parties, Individuals, Entities, Agreements" containing dozens of names, but nowhere does Mr. Lane clearly delineate which person(s) he intends to name as defendants on his claims.  Mr. Lane asserts twenty counterclaims, sounding in common-law fraud, various flavors of tortious interference with existing and prospective contracts, breach of contract, various conspiracies to accomplish these torts, and claims for "attorney misconduct," among other things.  Many of these "claims" are nothing more than identical bits of cut-and-paste boilerplate bearing no relationship whatsoever to the "claim" they support.  For example, his Third Claim, sounding in "negligent interference with contract," consists of 24 paragraphs of allegations: two incorporate by reference all of the preceding contents of the Answer; three recite the elements of common-law fraud and posit that Mr. Lane should enjoy a discovery-based accrual date of 2015 for his common-law fraud claims for limitations purposes, yet an accrual date of 2008 for damages purposes; and the remaining 19 paragraphs are assertions that Mr. Lane has been damaged in specified amounts in 19 different respects by the conduct alleged in the remainder of the Answer.  An identical set of 24 paragraphs support his Fourth Claim, sounding in tortious interference with contract; his Sixth Claim, sounding in intentional interference with prospective advantage; his Seventh and Eighth

Claims, sounding in fraud on the bankruptcy court and conspiracy to defraud the bankruptcy court, and so on.

Extending Mr. Lane all the benefits of liberal construction that come with his *pro se* status, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), the Court nevertheless finds nothing in Mr. Lane's counterclaims that would constitute a well-pled claim over which this Court could exercise subject-matter jurisdiction. Even if the Court were to assume that his claims captioned "Fraud on the Bankruptcy Court" and "Internal Revenue Service Fraud" could conceivably invoke federal law under 28 U.S.C. § 1331 -- a doubtful prospect in any event – the body of those claims are nothing more than the same irrelevant boilerplate that underlies Mr. Lane's many other "claims." In such circumstances, the Court is not inclined to search further for a reason to exercise jurisdiction over Mr. Lane's counterclaims. Accordingly, those claims are dismissed for lack of subject-matter jurisdiction as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Defendants' Motions to Dismiss (**# 30, 32, 66**), insofar as the Court **DISMISSES** Mr. Witt's First Claim for Relief under the RICO Act for failure to state a claim under Rule 12(b)(6). Upon that dismissal, the remaining claims by Mr. Witt and all claims by Mr. Lane are **DISMISSED** for lack of federal subject-matter

jurisdiction.  In light of the dismissal of all claims, the Clerk of the Court shall terminate all remaining motions and close this case.

Dated this 19th day of May, 2017.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge